morning, everyone. We have three cases, four cases on the calendar today. One is on submission. We have three being argued. I've been advised that everyone who is arguing is either present in the courtroom and we have one attorney arguing by zoom. He's also present. So dispense with the calling of the calendar. The covid protocol, as you know, is that attorneys, when they're once you're done arguing, you should put your mask back on. All right, so we'll proceed to the argument on the first case, Criscitello v. Kijakazi. And we have Mr. Gorton for the appellants. Thank you. I see you reserved three minutes for rebuttal whenever you're ready, Mr. Gorton. Thank you. May it please the court. This is a case involving the Equal Access to Justice Act fees, what are called E-A-J-A. And we, although we prevailed in the district court substantively, and the case was remanded and ultimately won, they denied E-A-J-A fees. E-A-J-A fees are, they're intended to even the playing field. The average person's financial means are not the same as the government and certainly in Social Security. We're dealing with people who haven't worked and haven't gotten any income. They're awarded if the position of the government is not substantially justified, either in law or in fact. And in this case, certainly we would argue, we would argue both, but but the primary basis of argument has been the, that it is not substantially justified in law. And especially because in reviewing it, you look not only at the agency decision, but you also look at the acts of the government in defending it. And... How much money is involved in this facet of the matter? Well, for counsel, none, because it all goes back to the claimant. Because we, we prevailed in, in the second case. We got what's called 406B. You got 406B fees? Right, 25%. So any E-A-J-A go back to the client. In terms of how much, it would be... So, so, I, I just want to clarify the record. The award and the preceding, preceding, preceding, was paid by the government, right? It was paid by the claimant. Out of, out of her award? Out of her award. Okay. Yeah. And, and so, you know, I'm here, really, we get absolutely nothing. It's, in fact, whatever time I take is, is lost. Because everything on E-A-J-A goes back. But it's, it's, it's, we're here for the legal principle. It's, it's really a chilling effect when, when you don't get E-A-J-A for other cases and where it's justified. Certainly in the law, I'm gonna do our prime, we did arguments across the board. The primary argument is with respect to both the agency, the Defendant's Council, who I have the utmost admiration, they do a great job, which comes into play in terms of their strategy, and the district court decision. So the, giving the greatest weight to the non-examiner, who had nothing before him other than the consultative examiner's report, no other brief in, in the argument before Magistrate Judge Peebles, who's also awesome, then again in their argument when we asked for E-J-A fees, they argued that it should be given, it shouldn't have, that, that Judge Peebles was correct and, and their position was substantially justified because of a statute that had been, the Social Security Administration had amended in 2017, and this was a 2015 case, and it didn't apply. So is your argument that we need to come up with like a per se rule that says if there's a misrepresentation of law or that the government knows or should have known that its position is incorrect, then it's not, then it can't be justified? Not a per se law, not a per se rule. I think every case obviously is reviewed in its entirety. In this particular case, the administration's, the Commissioner's Administrative Law Judge's position was incorrect. I know, but the judge, the awesome judge who presided over the matter said this was a close, close case. Factually. Yeah, so just following up on Judge Perez's question, if there is some legal error regarding a term that was I don't think the government's position then for the overall litigation is substantially unjustified because there was some legal error on a definition. What's that? Forgive me. No, go ahead. That's my question. Right. It's not, it's not some legal error. It's, it has to be substantially justified both in law and fact. So if there is a minor error, it, and, and we argue that it wasn't substantially justified in both, but, but the main argument is the law, and the not, that it was incorrect. There was just no way it was correct. It was not even close to being substantially justified, and that was then exacerbated by the Commissioner's position, which, and forgive me, I know they're saying it's an error. They're just too good. It's not an error. Three times they, they represented, and what they knew was an incorrect, incorrect law to the, to the magistrate. After you pointed it, after you pointed it out to them? Three times. So we did it in our, when they put their, their brief in in the district court, this is number one. When they put their brief in in the district court, we, we submitted a reply brief, and in our reply brief, we, that was the first time that we, because of their argument, that we said no, you know, their argument was the first time that they brought in the fact that the standard was that, was the 2017, and it wasn't a 2015 case. We pointed that out. So that was number one. They're, they're very, very good. What they should have done is submitted a letter to the judge. It was an error. They didn't. They doubled down on that. So that, that was number one. Number two is the argument before Judge Peebles, where they made the same arguments. They doubled down on it the second. The third was EAJA, where we submitted, Judge Peebles had said gratuitously in his decision at the end, you know, I don't think I'll award EAJA fees without the application, but in any event, when we did, we doubled, we said, look, here's the error, and again, three tries, and again, they did not correct it. They did not correct it until the second circuit brief. Fourth try, and then they did it in footnote three on page 28. Gee, we, we made a mistake. So. Counselor, I, I am persuaded that there was a really big mistake on the part of the government. What would help me is if you explained, is your theory that the district court made a error of law or fact? Are you saying that because the government doubled down and kept making a misrepresentation, they knew or should have known that it wasn't within the permissible bounds? Right. And, and. So you're saying it's the latter? I'm so sorry. Yeah, you don't need to apologize. You can't see when we're about to talk. So it's described by the court as a one or the other, and we describe it as a both, and not only as a both, but as a exacerbation by the government of the error by way of their litigation strategy. So we, we, we, we submitted four or five arguments as to why in law that decision should not have been given, it was given primary effect by the ALJ, and we argued three or four reasons, all of which were exacerbation by their litigation strategy. And that's, it's set forth, we set forth and it's pages 13 and 14 of our brief, but, but essentially the Erickson case, which again was one where they got a favorable decision after, and also the Padula case, that, that you're looking at all of those things. You're looking at the mistake in law and fact, or, not and, oh my goodness. But again, you're not, you're not saying that the district court made a mistake of law or fact. You're saying that the district court, because we're looking at it under abuse of discretion. Right. It was not within the permissible range for the district court to make this conclusion, given the mistake of law or fact. And, and correct, and the exacerbation of that. Well, and then the district court didn't acknowledge or explain it. Correct. Correct. Thank you. Thank you. Go ahead. May it please the court, my name is Timothy Boland, and I represent the Acting Commissioner of Social Security. This case concerns the narrow issue of the plaintiff's entitlement to attorney's fees under the Equal Access to Justice Act. And over 30 years ago, the Supreme Court decided Pierce v. Underwood, a decision with three key points that are at the core of this case. The first is that the substantial justification standard is not commensurate with the agency's success on the merits, or dependent upon the agency being substantially, the agency decision being supported by substantial evidence. The second is that the district court is in the best position to decide that the Supreme Court called was the multifarious factual question of entitlement to EJF fees. And the third, that EJF petitions should not result in litigation. And so therefore, they are reviewed by this court only for abuse of discretion. Can you tell me who you think has a burden of proof to say that the United States was substantially justified? Before the district court, the government bears the burden to prove that they were substantially justified. Okay, so can you tell me how having an incorrect standard, which you guys admit to doing, doing it three times, and then is, is, is, what is your evidence of substantial justification there, given that fact? I believe two, two responses to that, Judge Perez, and I'll try to take them in order. And it's Bettis. I apologize. The first is, in terms of the actual argument itself, I have to push back slightly at the characterization that this was a three-time representation and a double down. We made an argument in our merits brief. The argument was wrong. That happens in adversarial litigation all the time. And the district court recognized that it was wrong. Well, the district court recognized that it was wrong and went on to, nevertheless, address the other positions that the government raised. But where I think that the turning point comes in is now, before this court, the question is no longer whether that argument was substantially justified. The question now becomes, did Judge Peebles abuse his discretion to find that the government's position in total was substantially justified? And I think that latter point is an important one, because the Supreme Court has said in Commissioner of INS Vegene that the applicable standard is not whether a particular line item argument was justified. The standard from the text of EJIA is the government's position as a whole. Remind me at what point the error in the, concerning the provenance of this position was cleared up? Judge Peebles recognized that it was, the argument was not persuasive and dismissed it in ruling on the merits of the case. And then... Did he, at that point, was it clear when the statute had been amended and was the error clear to Judge Peebles, do you think? I believe it was. And if there's any doubt about that at the merits stage, it's very clear in his EJIA decision that he did not view that argument as being, certainly not persuasive, but not detracting from the government's ability to demonstrate that it was substantially justified. But this was after you heard from experts and the like, right? This was after Chapman had testified multiple times, this was after the regulation had been changed. Is that, I mean, this was not, it wasn't like you presented the argument and the judge immediately saw it, right? This was a litigated matter. Not quite, Judge. And the reason not so is because when Judge Peebles is looking at a cold administrative record, each side is making their argument akin to essentially a summary judgment or a position before this Court. Dr. Chapman was a reviewing physician. His opinion, her opinion, pardon me, was in the record before Judge Peebles at the merits stage. And obviously, he could contemplate at the EJIA stage whether the government's argument in that regard detracted from its ability to prove substantial justification. I think what's important is that on page 15 of the appendix, Judge Peebles expressly considers that point. He says, I note that the government made this argument and the applicability in terms of the date was off, as well as the section that the regulation relates to in terms of Dr. Chapman's opinion. The very next sentence on the appendix of page 15, he says, nevertheless, on balance, I find the government's position is substantially justified. And I think that's in keeping with what Commissioner Ryan S. V. Geene instructs the District Court to do, which is to look at the government's argument. Why was it substantially justified? The government's argument was substantially justified because it looked at far more than just a definition of moderate to offer why the ALJ was appropriate in affording great weight to Dr. Chapman's opinion. The Commissioner offered no fewer than five different reasons why that was appropriate. One of which was responding directly to the plaintiff's position that Dr. Chapman's opinion couldn't constitute substantial evidence. Another was pointing to the fact that the ALJ considered all the opinion evidence of record and articulated reasons under the regulations that were appropriate considerations for the weighing of opinion evidence. The upshot of all that simply is that the ALJ's decision was not supported by substantial evidence, but that doesn't dispense with the issue of substantial justification. But in the opinion, there was not a motion before the judge on fees and there was no hearing as to the appropriateness of the fee finding. My recollection of what the transcript was like was that it was almost immediate where, you know, we're going to say that this was not substantially justified, but if the fees come in later, you know, we're not going to support a fee finding, right? So was there an appropriate record before the District Court to be reviewing any or the magistrate judge to be reviewing any of this stuff? There was, Your Honor, because Judge Peebles made that key finding that I mentioned a moment ago on appendix page 15 after full briefing on the EJIA issue. So there's two different moments in time in which Judge Peebles commented on the issue of EJIA. The first was at the conclusion of the merits hearing where he suggested that he would have found or he would find the government's position substantially justified. Yeah, the first time, right? And then the second time is that it came before. And then the second time was after full briefing on the merits. I believe, I'm not positive, may have been even after oral argument on the merits. I could be wrong on that. I don't want to misstate what happened. But it was certainly after full briefing on the merits where Judge Peebles had a chance to consider the government's arguments, had a chance to consider the plaintiff's arguments and did what he should do under INSVG, which was decide the case on balance. The plaintiff wants a one strike and you're out rule here that you make one wrong argument and you are not substantially justified. But that's not what INSVG instructs. It instructs to look at the government's position as a whole, not at one argument out of a multifaceted mosaic of arguments in defense of the ALJ's position. I think it's important, too, to point out one other key point on this court's review. And that is, even if this court should find that Judge Peebles was wrong in this regard, disagree with his conclusion that the government's argument with respect to the definition of moderate doesn't, on balance, show the government is substantially justified, a decision from this court, as a matter of fact, Judge Parker, I believe you were on the panel in 2009, called Senville v. Madison, talks about this court's review of a trial court decision and says, even if the judge did make one erroneous finding out of a number of findings as it relates to the ALJ, that does not compel this court to reverse the district court's decision and to find that the government was not substantially justified. Because, again, the question is not line-item arguments. The question is the government's position as a whole. One other point I think is worth emphasizing on the standard of review in this case. And that is that there's essentially three prongs by which the plaintiff can carry her burden in this court to show abusive discretion. We've talked about, or the court engaged with Mr. Gordon about fact, law, and then the third one being the permissible range of choices. And that's the more amorphous kind of concept of what is the permissible range of choices. This court has cited, in a number of social security cases, all the way back to a case from 2001 called Zervos v. Verizon, which goes into detail about what that third prong really entails. And it's in footnote six of that case. And what Zervos says is that the permissible range of choices, that third prong of abusive discretion, looks at whether the trial court, what are the choices available to the trial court at the outer bounds of its decision-making? And did it make a choice within those outer bounds? And in footnote six, what the court says is actually quite impactful. It says that if it did make a decision within those outer bounds of decision-making, then that decision on abusive discretion review is ostensibly entitled to immunity on review from an appellate court. Because that third question, that third way to demonstrate abusive discretion is a narrow one. It looks, what are the confines, what are the outer bounds of choices that could be made, and where did the district court's choice fall? Does the analysis change at all because it was a post hoc rationalization? I mean, is there an element of bad faith in all of this, the fact that, you know, you were saying that a 2015 decision was based on a 2017 regulation, and you repeated to make that mistake multiple times? Is that something that we should be thinking about? No, Your Honor, and I'll offer two reasons why. The first is really the issue of whether this was a post hoc rationalization, at least to the merits part of the case. It's rather an opposite. It was never part of Judge Peeble's reasoning for rejecting that argument. No, but it was part of the ALJ, right? Like, it was before the ALJ determination, isn't that correct? Like, that's where most of the meat happened. I'm sorry, if Your Honor is asking if the... The Chapman report. Chapman was before, correct, and what the government did is add or attempt to add, albeit incorrectly, definition to rely upon the regulatory definition and to show what a term meant. The government didn't offer a substantive basis for the ALJ rejecting the opinion evidence. That would get into the Chenery Rule, which prohibits the government from offering post hoc bases to justify the government's action. It doesn't prohibit the government from making arguments about what the legal import of something in a case is, just from making a separate rationalized basis. And that goes back to the whole genesis of the Chenery Rule, which is the agency should articulate the basis for its decision. But it wasn't really just that mistake, right? I mean, I'm just not sure what to make of the fact, I mean, certainly it cannot be the case that one mistake would make the whole thing not substantially justified, but there were a bunch of things that went into the thing that you're saying is one, right? There were at least three experts, and there was a lot of hearing and a lot of discussion, and so you were wrong about that one thing that had a bazillion different components of it. And so where do we draw the line between it being enough, especially when you have the burden? You draw the line, Your Honor, at whether that substantiates a lack of substantial evidence or a lack of substantial justification. And the reason there's a dichotomy between the two concepts is because the purpose of EJA was not to be an automatic fee-shifting statute. It was to allow the government to take positions that were ultimately not more courts. It's an automatic one, but you do have the burden, right? I mean, there's no automatic fee-shifting statute that I know of. We have the burden at the district court, that's correct, Your Honor. No, I mean, I'm aware of this. And I think the only thing that bears repeating, and I realize I'm over my time, is that all of those things absolutely support Judge Peoples' conclusion that there was a lack of substantial evidence. But all of those things were also reasonable in fact in law as bases that could support Justice Chapman, pardon me, Dr. Chapman's opinion and the ALJ's decision. Even Judge Peoples recognized, for example, activities of daily living, Your Honor mentioned. He found that there was not a close parallel, a close comparison between the nature of the impairments in this case and the activities of daily living. But it went on to say that they are still an appropriate consideration. In terms of weighing the opinion evidence, Judge Peoples looked at and he reached a different conclusion when applying the regulatory factors to the opinions in record. And he found that Dr. Chapman failed to adequately articulate her findings. The lack of articulation is- I think we have the argument. Thank you, Mr. Bowen. Thank you, Your Honor. Mr. Gordon, you have three minutes in rebuttal. Thank you, and I won't need all three. I do want to talk about the standard for just a minute. The district court's decision is not substantially justified. The government's position, and it's he acts within his discretion unless the decision rests on an error of law, such as application of the wrong principle. In this case- Wait, no, no, no, no. You're mixing standards there. It's abuse of discretion. The district court in the fees review didn't make an error of law. Judge Peoples applied the correct standard. Judge Peoples applied the correct standard, right? We believe not because- What do you mean? What legal standard did Judge Peoples- He applied the standard incorrectly because there was such a clear error of- You're saying he abused his discretion. Yes. Right. But the legal standard he applied was correct. He noted the legal error that was made in front of the ALJ and that the government defended, and he said on balance. I still think it was close enough. Right. So there was no legal error there.  No. Well, I understand what the court is saying. The Erickson case, that's 557 F3rd 79, and again on page 82. It says that he does not act within his discretion if the decision rests on a clear error of law, and he doesn't recognize that. But this doesn't. Pardon? This doesn't. The standard, I thought you told me before, counsel told me before, the confusion over the standard got cleared up before he ruled. No, but that was one thing. So we look at Chapman. Let me give you five. There is no rationale for giving Chapman any weight, and that's where the error is. The last thing you said is the last thing. Under the standard that you're urging us, do you know how many times the court remands cases back because of a lack of substantial evidence or a lack of adequate explanation on these matters? It happens, as you know, all the time. I do. So what takes this case out of the realm of every other case where a district court judge or magistrate judge says the reasoning was insufficient here, go back? There's nothing unusual about this case other than the fact that there was an error that was made with respect to a definition. But the judge who reviewed this and sent it back said that that does not overall make the whole case substantially unjustified. It's the error of the law. Let me just, in order to find that there was not an error of law, you have to find some way in which Chapman should have been given some effect. And that's the argument I'm trying to get out. If there was, and it was simply a matter that they offered the wrong law, then I wouldn't be here. It's number one, there is no way to look at it under the law to give Chapman any effect. The only record he had was Dr. Sloack. And Sloack says, up to marked impairment maintaining an ordinary routine. That's what eventually won the case. And that's number one. Number two, even the Chapman says a moderate. And then we get into the argument of moderate. Number three is, it was, they had the post hoc argument. Number four is, it is the wrong standard, and in terms of the wrong year. And number five is the exacerbation of all of that by the misrepresentation. So- Thank you, Mr. Chairman. Thank you. Thank you both. We'll reserve decision. Have a good day.